Diana Shobel, on behalf of Mary Johnson and 4T Johnson, this case involves the propriety of holding two corporate officers, Mr. and Mrs. Johnson, personally liable for employee payroll taxes owed to the United States by COBA Institute, Inc., the corporate employer for quarterly tax payments ranging from 2001 through 2004 under section 6672A of the tax code. Are you going to address Mrs. Johnson or Mr. Johnson? Primarily Mrs. Johnson. Mrs. Johnson? Mrs. Johnson. Mary Johnson, correct. Now, the District Court for the District of Maryland believed that was proper when it made its motion for summary judgment and her judgment against the Johnsons for hundreds of thousands of dollars in back taxes. We contend that that decision was incorrect and are asking the Court to reverse. Now, again, our primary argument is with respect to Mrs. Johnson. And imposing personal liability on Mrs. Johnson, the Court necessarily needed to find that Mrs. Johnson was responsible for COBA's decisions regarding withholding and payment of taxes. And she would be liable if and only if it was shown that she was, one, responsible for the collection and payment of the taxes, and two, willfully failed to see to it that those taxes were paid. And, of course, this is what . . . When you use that first prong in your example, responsible for, isn't the test fairly universally, if not completely, applicable in all of the circuits to address liability under this statute? It's whether you have the power and the authority to take care of the taxes, not whether it's your particular responsibility, because nearly every corporation or business entity has a financial person whose responsibility it is to pay the taxes. But they're not a shareholder, they're not an officer. Well, that's correct, Your Honor. However, in determining if somebody is a responsible party, there's a number of factors that goes into determining whether there is that requisite authority. And simply being a title holder with a corporate officer position isn't necessarily going to make someone a responsible party. Having check-signing authority is not necessarily going to be dispositive. But in terms of what is, it's not disputed here, is it, that Mary Johnson had the authority to pay the taxes and ultimately did? That she ultimately did pay the taxes? I believe when she learned that . . . after learning of the deficiencies, she said see to it? She engaged Mr. Johnson, who was actually the one running the company at the time. Mrs. Johnson, she was a shareholder of the company. She was one of three members of the board of directors, and she was vice president. But in terms of the practical day-to-day role . . . The record indicated she was the sole shareholder. That is correct, yes. She found out the taxes that are at issue here were not paid. She fired the finance director. And directed that they be paid, did she not? Going forward. Well, I believe that she directed Mr. Johnson to . . . Mr. Johnson did all the hiring and firing. She directed that they be paid by someone. That is correct, yes. But during the period at issue, between 2001 and 2004, she had no knowledge that they weren't being paid. Does it matter? I think it matters because . . . I think the courts look at this on a case-by-case basis. And I think that this is more akin to the situation in the court's decision in O'Connor . . . where you did have somebody who was a shareholder, who was a corporate officer, and who did have check signing authority. But the court did not find in that instance that he was responsible. Wouldn't it look a little odd if we hold that somebody who is the owner and sole shareholder of the company . . . The chairman of the board. Chairman of the board, signing leases, signing loan guarantees, taking out loans for the corporation, making major personnel moves . . . like firing the finance director. I mean, if we say she's not a responsible person, wouldn't we look ludicrous? Well, I think Your Honor would be . . . the court would be looking at this situation on a case-by-case basis . . . because these are very fact-specific kinds of cases. And, while she may have signed certain things, again, she was not involved in the decision-making process. She was not involved in the payroll.  But, unlike the O'Connor case, here, once the deficit in taxes came to her attention . . . in the succeeding years, she drew well over a half a million dollars in compensation . . . and paid any number of other creditors of the business. And, that sort of bleeds responsibility and willfulness together. But, that's not a factor that a court can ignore. And, it certainly distinguishes the case that you cited . . . where the person who was sought to be held responsible, as a responsible person, didn't get anything. Well, I think one of the . . . How do you get around that? Well, in terms of . . . if we're getting into the willfulness . . . in terms of paying other creditors . . . as a practical matter, the only way you really can continue to exist as a viable business . . . is to continue to pay your other creditors. That's just the reality of it. But, it wasn't . . . the question . . . It wasn't just that she paid other creditors. She paid herself, significantly, after she learned of the deficiencies. Doesn't that establish, under our precedent, willfulness as a matter of law? Well, the case law does indicate that that can establish willfulness as a matter of law. What we're asking is that the court maybe rethink that, in terms of the fact that . . . not so much the payments to her, but the payments to the other creditors . . . again, were necessary to keep the business up and running . . . so that the business could continue to make the payroll taxes. But, that's not her fault, really. I mean, the law requires that the IRS have a position of preference. And, the reason is that . . . I mean, nobody's a great fan of taxes, but the withholding taxes for FICA and employee income . . . are absolutely the cornerstone of our whole tax system. That's how the government gets a massive part of its revenue. And, you know, a lawsuit like this, just seeks to chip away at the foundations. And, you . . . somebody with all of this authority . . . making personnel moves, signing critical documents . . . Chairman of the Board, sole shareholders . . . all these different things . . . We're not going to . . . If we were to say that they weren't a responsible person, that would be alarming. I mean, probably cause for summary reversal. And, to say that there's no willfulness here . . . and reverse Judge Chazanel on these points . . . when she knows she's got to pay her liability under these trust funds . . . to the government first. And, she can't just go at her desire. The law doesn't allow her the latitude to sort of pick and choose among creditors. And, it certainly doesn't allow her to put herself at the head of the line. As Judge Duncan points out, there were very significant payments made to her . . . that should have been made to the Internal Revenue Service. Well, respectfully, Your Honor, I would also point out that from that point forward . . . the payroll taxes were getting paid and were getting paid in a timely manner. And, there were also payments made under an offer and compromise made . . . with the government on a regular basis. So, the payments were going to the government at that time. Did every resource of the company go towards those taxes? No, they did not. And, that . . . Doesn't it also . . . I mean, it proves at the same time. And, if you're aware of some evidentiary rule that the same evidence can't prove . . . responsible person and willfulness, you should tell us about it. But, nothing happened with Mrs. Johnson's authority . . . between the period where the taxes that are now at issue were unpaid . . . and the taxes that were paid thereafter, were paid by her direction. She had the same authority during all those periods. She just decided she better exercise it . . . once she found out that the taxes at issue here, were unpaid. Doesn't that prove that she's a responsible person . . . because she exercised the authority fully at that point? Authority she'd always had? Well, that could be a consideration. But, again, as a practical matter . . . I mean, she didn't even . . . she didn't even know which creditors to pay or who to pay. That all came at the direction of Mr. Johnson. And, maybe after discussing this with Mr. Johnson . . . she had an idea of what to do about this, possibly. I'm not sure. And, I'm not sure if that answered your question, Your Honor. Well, you did what you could. Okay. I don't want to take you off . . . You can argue whatever you wish to . . . you know, further about Mrs. Johnson. But, before you go, I want to ask you about Mr. Johnson's statute of limitations argument. Uh-huh. I'm not quite sure what it is. You've raised the issue. Your last assignment of error, number five . . . says that there was an error in determining that the assessment was made . . . within the three-year limitations period. When we look at the brief on page 30 . . . we've basically got one paragraph that says this was assessed after the expiration of the limitation period. But, I'm not quite sure exactly what you're trying to say there. So, articulate for us, if you would, what the statute of limitations argument is. Well, Your Honor, that goes into the timing of an assessment notice that Mr. Johnson never received . . . and that was not found as part of the Internal Revenue Service file. Is that the form 11-53? Yes. I thought that he conceded that that was . . . that the issuance of that was valid. I didn't recall that he raised that issue as a statute of limitations argument in the district court. I thought his argument was that the . . . and I'm not trying to tell you what your argument is, but this is what I understood it to be . . . based on reading Judge Chasnow's opinion and this paragraph in your brief. I thought your argument on the statute of limitations was that the form 44-30 . . . was issued after the statute of limitations expired . . . even though the assessment that's reflected on it was made within the statute. I thought your argument was that since the actual form was completed later . . . that that was the statute of limitations period. Now, you tell me if I'm right or wrong. No, I think they're both components of that. I think those were included . . . both included in that argument. Did you make the argument in the district court that the form 11-53 . . . that he acknowledges was sent . . . that that is part of your statute of limitations argument? Did you argue that to the district court? Well, I did not because I was not counsel in that case. Well, based on your understanding of the record, was that argued? I'm sorry. I'm just not sure right now. Why would . . . the problem . . . I had a problem similar to Judge Agee's . . . which actually led me to the suspicion that the statute of limitations argument . . . may just have been abandoned because it was impossible for me to understand what it was. There is an obligation on the part of the parties to make an argument in a form . . . that is sufficiently comprehensible to enable review. Thank you, Your Honor. You don't wish to respond? Is it . . . It's a bit unclear. It's a bit murky to me as well, what the statute of limitations argument is. And, does that not . . . at least militate in favor of our not considering it because we are unclear? Or, is it just that we are missing something? I think . . . Well, I think that the argument had to do with . . . And, he never received that. And then, secondly, that the record of the assessment itself . . . was created outside of the limitations period of those two components. But, the point is . . . I mean, the district judge listened to these arguments . . . and rejected them. And, you don't give us any reasons . . . the reasoning of the district judge. I mean, you just restate it. But, there are no reasons supplied as to why the district . . . You don't take on the district judge's reasoning at all. And, no, I . . . I think Judge Agee is right. It's . . . There are all these different forms that are floating in and out. And, when they were sent, and this and that . . . And, it's just . . . There's no . . . There really isn't any coherence to it. And, I'm not blaming you for it. Because, I don't . . . I think there's probably not much to it. But, I think you probably put your . . . strongest foot forward and placed the emphasis . . . where it should have been placed. But, you know, it's . . . The party seeking a reversal has . . . some obligation to show the court why that should be . . . why that should be done. I understand, Your Honor. And, in the remaining time . . . In fairness to you, I think the Form 4340 argument was made in the district court. And, the district court judge did address that at some length. It's just as Judge Duncan points out. It's hard to tell in one sentence . . . in the brief . . . how you brought that forward to us. But, we've probably spent enough time on that. Thank you, Your Honor. In the few minutes I have, I did want to . . . address the fact that there was also a material issue . . . a disputed fact with the amount of the assessment . . . that the court ultimately . . . reduced to judgment against both Mr. and Mrs. Johnson. At the time of . . . the Johnsons had submitted expert reports . . . based from . . . Can I ask what the standard of review under 6672 is? When you say that the district court erred in determining the amount . . . of liability or reviewing that under a clear error standard. It's a clearly erroneous standard, isn't it? It's finding a fact. Well, the court entered summary judgment when there was a dispute of material fact . . . as to the amount of the judgment. So, I think that Your Honor would be reviewing that de novo. But, in terms of what . . . It's your job to . . . press the genuineness of the dispute . . . and the materiality of the dispute. And, I don't see how you can do that . . . with respect to this Mr. Brewitt's testimony. Because, when the government filed its motion . . . for summary judgment . . . in front of the district court . . . the taxpayer never relied . . . upon the Brewitt testimony . . . in opposing summary judgment. Mr. Brewitt's testimony just didn't . . . didn't make an appearance . . . in the relevant documents. Now, all of a sudden . . . we're . . . they're saying, well . . . we ought to be reversing on the . . . on the basis of Brewitt's testimony. But, if it's reversible error and whatever . . . why wasn't it included in the opposition . . . to the government's motion for summary judgment? Again, since I wasn't counsel below . . . I'm not sure specifically what the thought process was in that. However, there were pending motions . . . there was a pending motion . . . to strike the expert report. Again, they had been submitted to the court . . . and they were part of the record. So, I believe that . . . Did Brewitt's report even appear in your own . . . you filed a . . . there were cross motions for summary judgment, weren't there? Correct. Well, did Mr. Brewitt's reports appear . . . in your own summary judgment motion? I don't believe they were cited there either. They were part of the . . . they were . . . again, they had been submitted to the court. There was a motion pending . . . If neither Mr. Johnson or Mrs. Johnson . . . didn't discuss or cite Mr. Brewitt's report . . . in their opposition to summary judgment . . . in their own motion to summary judgment . . . his reports were never submitted as any kind of exhibit . . . attached to the opposition . . . to the government's motion for summary judgment . . . and there's no use made of them . . . and then you're up here on appeal saying . . . there's a genuine issue of material fact . . . when there's no mention of them . . . they're not submitted as exhibits to the trial judge . . . in connection with the summary judgment motion . . . there's no mention of them in the summary judgment motions. So, how did that become a basis for reversal . . . of an error? Well, Your Honor, the court . . . there was a motion for reconsideration subsequently filed . . . and the court did have the discretion to go and . . . and take a look at those at that point . . . to the extent the judge was not aware of it. So, we're saying that the court should have exercised her discretion . . . and then gone and considered it at that point in time. Thank you. Thank you, Your Honor. Honors. Ms. Wolfinger, we'd be pleased to hear from you. Good morning, Your Honors. Gretchen Wolfinger for the United States. I will begin by briefly addressing the . . . responsible person's status of Mary Johnson. It appears from comments and questions from the bench that . . . the court has a good grasp of the facts . . . and the court has a good grasp of the facts . . . and the implication of those facts in this case. She was the sole shareholder. She was the sole financer of the company. She was the chairman of the board . . . and she used that authority to appoint her husband president . . . and herself vice president. Can we cover all that in our questions?  Thank you, Your Honor. The practical implications of this are the . . . that someone could endow an individual . . . with all kinds of titular authority . . . and park the assets of the corporation . . . and dividend payments in a closely held corporation . . . and salary and all kinds of other assets . . . and then say later that this authority was purely nominal . . . and that the individual is not a responsible person . . . because it was nominal authority . . . and then all kinds of corporate assets are parked . . . in the name of the nominal party. I mean it's . . . we'd be creating a giant loophole. Here's how you get out of paying your trust fund taxes. That's exactly right, Your Honor . . . and this circuit's case law speaks to that. I'm sorry. I would like to rephrase my question . . . and say is there anything we didn't cover in our questions? Thank you, Your Honor. I believe the only thing that hasn't come up factually . . . in regard to Mrs. Johnson . . . was that she was not only exercising titular authority. She did show up at the corporation . . . and, in fact, she was . . . she appointed herself or called herself . . . Director of Human Resources or Relations. So, she not only had the authority on paper . . . she was actually showing up at the corporation . . . and I believe it was her husband . . . She was signing some pretty important legal documents . . . and they were binding. You know, she was taking out loans. Yes, guaranteeing things, leases . . . and also, in the words of her husband . . . she wanted to be Human Relations Director . . . because she wanted to keep her hand in the pie . . . which certainly rebuts any argument . . . that she was solely a passive investor. Now, you . . . We do have your brief and everything . . . and perhaps a short answer to Judge Duncan's question . . . would be advisable? That was my answer and I was prepared to move on . . . if the court would like to discuss the statute of . . . Maybe, I don't want to speak for my colleague here . . . but, it may be that the question covered the case as a whole. I am certainly prepared to sit down . . . if that's the court's desire. Your brief on the statute of limitations . . . contends that there's a waiver of the entire issue . . .  No, I believe the entire issue . . . is waived for two reasons . . . that, or it may be the same reason . . . different sides of the same coin. The fact that the basis for the District Court's decision . . . and the reasoning of the District Court . . . was not rebutted or challenged in any way . . . by appellant . . . and the fact that any argument that was made was . . . I believe in the words of the panel . . . difficult to understand. Okay, thank you. Is there anything? Thank you, Your Honors. Thank you and . . . Oh, don't worry. I'll give you . . . Ms. Shobu, do you want . . . Do you have anything you wish to say? Okay. Oh, all right. We'll come down and greet counsel and take a brief recess.
judges: J. Harvie Wilkinson III, Allyson K. Duncan, G. Steven Agee